**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ZIP TOP, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 22 C 5028** |
| | ) | |
| **v.** | ) | |
| | ) | **Judge Jorge L. Alonso** |
| **S.C. JOHNSON & SON, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant, S.C. Johnson & Son, Inc., sells certain reusable freezer- and oven-safe zippered silicone containers called Ziploc Endurables. Plaintiff, Zip Top, Inc., claims that these containers infringe certain patents assigned to plaintiff, which disclose a zippered silicone "foodstuff container," U.S. Patent No. 11,358,755 ("the '755 patent"), and a process for making such a container, U.S. Patent No. 11,383,890 ("the '890 patent'). The parties have filed cross-motions for summary judgment on the issue of infringement and whether the '755 patent is invalid for indefiniteness. For the following reasons, the Court grants defendant's motion on the infringement issue and denies plaintiff's.

I.  **Background**

Plaintiff sells a line of food storage container products that, plaintiff contends, embody the patents-in-suit. (*See* Pl.'s LR 56.1 Resp. ¶ 24, ECF No. 60.)

A.  **The '890 Patent**

The '890 patent includes twenty claims for "silicone container making processes." (Pl.'s LR 56.1 Resp. ¶ 13.) Claim 1 describes a process for making a molded silicone "unitary whole container comprising: a container portion defining a mouth, wherein the mouth has at least one

flexible spout and first and second interior sides opposite each other; [and] a zipper portion comprising: a female zipper member comprising . . . at least one female end section proximate the at least one flexible spout and . . . a male zipper member . . . comprising . . . at least one male end section proximate the at least one flexible spout." (*Id.* ¶ 14.) Claim 9 describes a similar process for making a molded silicone container "comprising: a container portion defining a mouth, wherein the mouth has at least one flexible spout" and a "zipper portion comprising: a female zipper member" that "terminates at the at least one flexible spout; and a male zipper member" that "terminates at the at least one flexible spout." (*Id.*) All other asserted claims are dependent on either Claim 1 or Claim 9; therefore, all claims require a container mouth with "at least one flexible spout." (*Id.* ¶ 16.)

The patent includes several drawings of embodiments of the invention, which the specification variously identifies as containers, bowls, or tumblers. One embodiment, a tumbler, is represented by Figures 5A, 5B, and 5C. The specification describes this embodiment as having tips that function as "handles" for the user to hold while closing the zipper members, which "cross over" one another so that the zipper elements completely engage at the tips, even when the mouth is open, and "the mouth forms a spout at each tip." (Def.'s LR 56.1 Stmt. Ex. 1, Dryden Decl., Ex. 1, '890 Patent at col. 8 ll. 30-43, ECF No. 48-1.) Two alternative embodiments, also referred to as tumblers, are depicted in Figures 7A-7D and 6A-6G. In each of these embodiments, the zipper members "do not interfere with the spout" (*id.* at col. 10 ll. 61-63), which "allows a fluid contained within the tumbler to be poured out of either spout without flowing over either of the male and female zipper members," which prevents "debris and residue" from "becom[ing] lodged in the channel" (*id.* at col. 10 ll.5-12, col. 10 l. 66–col. 11 l. 6).

The Merriam-Webster dictionary defines a spout, in relevant part, as "a projecting tube or lip from which a liquid (such as water) issues." (Pl.'s LR 56.1 Resp. ¶ 20.) Similarly, Dictionary.com defines a spout, in relevant part, as "a pipe, tube, or liplike projection through or by which a liquid is discharged, poured or conveyed." (*Id.*)

**B. The '755 Patent**

The '755 patent includes nineteen claims for a zippered "flexible foodstuff container." Among the asserted claims are three independent claims, Claims 1, 15, and 18. Each of these claims describes a "sealable container comprising:" a base and sides that allow the container to stand on its own while open and a zippered mouth, "wherein at the first and second tips, ends of the first and second zipper members are angled at about 45 degrees, so that when the zipper members are engaged, they seal the mouth at the tips." (Pl.'s LR 56.1 Resp. ¶ 28.) Thus, all asserted claims require the "ends of the . . . zipper members" to be "angled at about 45 degrees, so that when the zipper members are engaged, they seal the mouth at the tips." (*Id.* ¶ 30.)

During prosecution, the patent's proposed language was amended to include the 45-degree-angle limitation to distinguish the claims over prior art. (*Id.* ¶ 36.) In its first instantiation, this limitation referred to "angles of about 45-degrees between the first and second sides," located at "the first and second tips." (*Id.* ¶ 38.) In subsequent versions, the proposed claims continued to refer to a 45-degree angle between the "sides" of the container. (*Id.* ¶ 39.) The examiner, however, rejected the claims for, among other reasons, lack of written description supporting the 45-degree-angle limitation. (*Id.* ¶ 41.) This rejection resulted in another amendment, in which the claims took essentially their final form, referring to angled "ends," rather than sides. (*Id.*)

## II. Analysis

Defendant moves for summary judgment of noninfringement and invalidity due to indefiniteness, and plaintiff cross-moves for summary judgment on the infringement issue. For purposes of the present motions, defendant disputes only two claim limitations: the "spout" limitation of the '890 patent and the "angled at about 45 degrees" limitation of the '755 patent.

### A. Legal Standards for Summary Judgment on Patent Infringement Claim

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The Court may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to competent evidence that would be admissible at trial to demonstrate a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011); *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013). The Court applies these "ordinary standards for summary judgment" in the same way whether one or both parties move for summary judgment; when the parties file cross-motions, the Court treats each motion individually, "constru[ing] all facts and inferences arising from them in favor of the party against whom the motion under consideration is made."

4

*Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017); *see Reeder v. Carter*, 339 F. Supp. 3d 860, 869-70 (S.D. Ind. 2018).

The Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). "A determination of infringement generally requires a two-step analysis—the court first determines the scope and meaning of the claims asserted, and then the properly construed claims are compared to the allegedly infringing device." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1350 (Fed. Cir. 2022). "Literal infringement exists when every limitation recited in the claim is found in the accused device." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1341 (Fed. Cir. 2016).

The first step of the infringement analysis, known as claim construction, is the threshold "process of giving proper meaning to the claim language," *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997), which "defines the scope of the protected invention," *Bell Comm'ns Rsch., Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 619 (Fed. Cir. 1995).[1] Claim construction is an issue of law for the Court to decide. *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1315 (Fed. Cir. 1999).

Claim construction begins with analysis of the "words of the claims themselves, both asserted and nonasserted." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir.

---

[1] The "claim" is the part of the patent "particularly pointing out and distinctly claiming the subject matter which the inventor . . . regards as the invention." 35 U.S.C. § 112(b). It is the concluding portion of the "specification," the part of the patent that contains "a written description of the invention, and of the manner and process of making and using it." 35 U.S.C. § 112(a); *see* 35 U.S.C. § 111(a)(2), 35 U.S.C. § 154(a)(4). The patents-in-suit also include "drawing[s]" to aid in "understanding . . . the subject matter sought to be patented." 35 U.S.C. § 113; *see* 35 U.S.C. § 154(a)(4).

1996). The terms of a claim are to be given "their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. But courts must carefully "review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *Vitronics*, 90 F.3d at 1582. "[A] patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." *Id.* The specification is usually "dispositive" of the claim construction issue; "it is the single best guide to the meaning of a disputed term. *Id.* If the specification is not dispositive on its own, courts may go on to consider the "prosecution history of the patent," which is "the complete record of all the proceedings before the Patent and Trademark Office." *Id.*

After considering the evidence "intrinsic" to the patent, as enumerated above, the Court may also consider "extrinsic" evidence, such as "expert and inventor testimony, learned treatises," and "dictionaries, especially technical dictionaries." *Phillips*, 415 F.3d at 1317 (cleaned up). Such evidence can help the Court to understand "the background science or the meaning of a term in the relevant art." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015).

"Where the parties do not dispute any relevant facts regarding the accused product, . . . but disagree over possible claim interpretations, the question of literal infringement collapses into claim construction and is amenable to summary judgment." *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*,

6

103 F.3d 978, 983 (Fed. Cir. 1997); *see Zelinski v. Brunswick Corp.*, 996 F. Supp. 757, 759 (N.D. Ill. 1997), *aff'd,* 185 F.3d 1311 (Fed. Cir. 1999).

### B. Infringement of the '890 Patent—"Spout"

According to defendant, the Ziploc Endurables product, unlike plaintiff's products and unlike the invention claimed in the '890 patent, does not have a spout. Defendant posits, and plaintiff admits, that a "spout," given its plain and ordinary meaning, is a "distinct feature that directs liquid from and facilitates the pouring of fluid from a container." (Pl.'s LR 56.1 Resp. ¶ 20; Pl.'s Mem. in Supp. of Cross-Mot. and Resp. Br. at 4 n.1, ECF No. 59.) Far from "facilitat[ing] . . . pouring," defendant argues, the zipper members of the Ziploc Endurables product are bonded together with silicone to *prevent* leakage. (Pl.'s LR 56.1 Resp. ¶¶ 56-57.) Therefore, defendant submits, the accused product contains no spout, and its product does not infringe the '890 patent.

Plaintiff responds that this argument relies on a faulty construction of the term "spout." According to plaintiff, the fact that the bonded silicone at the tips of the accused product may, in some sense, obstruct flow from the container does not mean that there is no "spout." Plaintiff argues that the zipper members of the embodiment depicted in Figures 5B and 5C of the '890 patent cross over one another in the same fashion as the zipper members of the accused product. Further, plaintiff submits images showing that water can be poured out of the accused product by holding it by the tabs and tipping it. (Finell Decl. Ex. A, ECF No. 62 at 10-13.) Therefore, plaintiff concludes, the Court should construe "spout" as "a distinct feature that directs liquid from and facilitates the pouring of fluid from a container, *including* spouts with 'cross-over' zipper members (Figures 5A-5C) and spouts with non 'cross-over' zipper members (Figures 6A-6G and 7A-7D), and unobstructed or unimpeded fluid flow is not required." (Pl.'s Reply Br. at 2, ECF No. 77 (emphasis added).)

First, the Court agrees with the parties that the term "spout" is properly construed as a "distinct feature that directs liquid from and facilitates the pouring of fluid from a container." This is consistent with the plain and ordinary meaning of the word, and no party has pointed to any evidence, intrinsic or extrinsic, to suggest that this ordinary meaning does not apply here.

The Court does not agree with plaintiff that it should add to this construction the qualification that the term "include[s]" spouts with or without cross-over zipper members that may or may not obstruct or impede the flow of fluid. Defendant calls plaintiff's lengthy discussion of the cross-over zipper members a "boondoggle" and a "sideshow" (Def.'s Combined Reply and Opp'n Br. at 6, ECF No. 66), and the Court agrees with defendant that these terms are appropriate. The fundamental flaw in plaintiff's argument is that, without any explanation or justification, plaintiff treats the cross-over zipper members mentioned in relation to the embodiment depicted in Figures 5A-5C of the '890 patent as *part of the spout*, rather than as separate elements of the patented invention, which happen to be *adjacent to the spout* in that embodiment. Or, as defendant aptly puts it, "the zipper members do not *form* the spout—they are used *in conjunction with a spout*." (*Id.* at 7.)

It is clear from the plain language of the two independent claims at issue, Claim 1 and Claim 9, that the zipper members are not part of the spout. Both claims refer to a "unitary whole container" product comprising (1) a "container portion defining a mouth" that "has at least one flexible spout" and (2) a "zipper portion comprising" a "female zipper member" and a "male zipper member." ('890 Patent col 11 ll. 27-55, col. 12 ll. 44-57.) The zipper members are not in the same "portion" of the claimed "unitary whole container" as the spout, so they are not part of the spout.

Subsequent language in each claim reinforces this reading. In Claim 1, each of the zipper members has an "end section proximate the at least one flexible spout." Neither party mentions

the tortured syntax of this phrase, but, whatever it means for the "end section[s]" of the "zipper member[s]" to be "proximate the at least one flexible spout," that bizarre phrase makes clear that the zipper members are one thing and the spout is a separate, "proximate" thing. (*Id.* at col. 11 ll. 34-55.) Similarly, in Claim 9, each of the zipper members "terminates at the at least one flexible spout." If they "terminate" at the spout, they are not part of the spout. (*Id.* at col. 12 ll. 52-57.)

This interpretation of the plain language of the claims is confirmed by the '890 patent's specification and drawings. According to the specification, it is the "mouth," not the "zipper members," that "forms" the "spout." ('890 Patent at col. 8 ll. 42-43.) Each embodiment depicted in the patent, including the embodiment depicted in Figures 5A, 5B, and 5C, includes a distinct, approximately V-shaped or "liplike" (Pl.'s LR 56.1 Resp. ¶ 20) feature at each tip, separate from the zipper members, that resembles what anyone would call the spout of a pitcher or like container, and it is shaped as if to facilitate pouring in the same manner.

Plaintiff focuses on Figures 5B and 5C, which seem to show zipper members extending from one end of the container to the other, with a "spout" near where they join, toward the tips:



FIG. 5B    FIG. 5C

However, as defendant correctly explains, these are "cross-sectional top view[s]" ('890 Patent at col. 8 ll. 21, 44) of the same embodiment depicted in Figure 5A, which depicts a spout feature that



FIG. 5A

appears to be separate from the zipper members. For these drawings, the specification defines reference numeral 52 as the "mouth," numeral 53 as the "spout" at the tips when the "mouth" is open, and numerals 57 and 58 as the "zipper members." (*Id.* at col. 7 l. 48, col. 8 ll. 22-23, 43.) When Figures 5B and 5C are compared with Figure 5A, it is clear that the "spout" at 53 is separate from and above the "zipper members" at 57 and 58, although it may appear otherwise from a cross-sectional top view.

This becomes even clearer by reviewing drawings of other embodiments, such as in Figure 6A and Figure 7A, which, like Figure 5A, are perspective views—not top views—of similarly shaped tumblers with evident spout features. In Figures 6A and 7A, the zipper members are more pronounced, and they are labeled with reference numerals, so it is clearer than in Figure 5A where in the container they are located; and they do not appear to form part of the spout. Further, it is clear from the written description of these drawings that the zipper members and spout are separate elements, particularly where the text states that, in these two embodiments, the "zipper members do not interfere with the spouts." (*Id.* at col. 10 l. 63.) The zipper members could hardly "interfere" (or not) with the spout if they are part of the spout.

And if the applicant who sought the '890 patent intended for the term "spout" to include the zipper members, a definition that would have added an element not carried by the ordinary meaning of the word, she had to clearly articulate that definition. *See Thorner v. Sony Computer*

*Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) ("To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning.") (internal quotation marks omitted). "It is not enough for a patentee to simply . . . use a word in [a certain] manner in [any or] all embodiments[;] the patentee must clearly express an intent to redefine the term." *Id.* (internal quotation marks omitted). Plaintiff's attempt to reverse-engineer a new definition of "spout" by pointing to the drawings in Figures 5B and 5C is not convincing, when Figure 5A shows that the same embodiment depicted in those figures has a "spout" feature that is separate from the zipper members. *See id.* at 1367-68 ("[T]he implied redefinition must be so clear that it equates to an explicit one.") (internal quotation marks omitted).

Based on the claim language, the drawings, the written description, and the entire specification, it appears that, whether the zipper members cross over, engage, or disengage at the spouts in an open configuration, the zipper members are not the spout or part of it; rather, the spout is a separate feature. Thus, the Court construes the term "spout" to mean a "distinct feature that directs liquid from and facilitates the pouring of fluid from a container." The Court does not construe the term "spout" to include the zipper members, which are a separate element of the invention.

Having construed the disputed claim term, the Court turns to the second step in the infringement analysis: comparing the properly construed claims to the accused product. The comparison is simple: it requires only the briefest examination of the Ziploc Endurables products to see that they contain no distinct feature that can be fairly described as directing liquid from the container and facilitating the pouring of fluid from it. (Pl.'s LR 56.1 Resp. ¶¶ 54, 69 (including photographs of the accused product); *see id.* ¶¶ 45-52 (same, from different angles); Dryden Decl. Exs. 15 & 16 (product samples).) Plaintiff insists that the point at which the zipper members cross

over is a "spout," but this is not a "distinct" feature that "directs liquid from" the container or "facilitates the pouring of fluid" from it; at best, it permits the pouring of fluid when the open container is tipped to the side. Of course, the fact that one *can* pour fluid out of a Ziploc Endurables container does not mean that any part of the container over which the fluid passes is a spout; one can pour fluid out of any open container, no matter how it is shaped or designed, regardless of whether it has a spout.

Infringement, unlike claim construction, is a question of fact. *Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed. Cir. 2016). This dispute concerns the interpretation of the claim, not any material facts regarding the accused product, so "the question of literal infringement collapses into claim construction and is amenable to summary judgment." *See Zelinski*, 996 F. Supp. at 759 (citing *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1578 (Fed. Cir. 1996)). After properly construing the term "spout," there is no genuine dispute of material fact that the accused product does not contain a "spout"; no reasonable juror could find otherwise. Because the "spout" limitation is included in each of the asserted claims, but not in the accused product, defendant is entitled to summary judgment on the issue of infringement of the '890 patent.

### C. Infringement of the '755 Patent—"Angled at About 45 Degrees"

Defendant argues that it is entitled to summary judgment on the issue of infringement of the '755 patent because plaintiff has not come forward with evidence to establish that the accused product includes zipper members that are "angled at about 45 degrees" at the tips.

There appears to be no need to construe these claim terms, apart from giving them their plain and ordinary meaning. The parties agree that an angle is the space between two intersecting lines (Pl.'s LR 56.1 Resp. ¶ 32), and "about 45 degrees" identifies the claimed angle with near-mathematical precision. The Court has no need to go further. *See Vivid Techs., Inc. v. Am. Science*

*& Eng'g*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy."); *see also Saso Golf, Inc. v. Nike, Inc.*, No. 08 C 1110, 2013 WL 4804835, at *5 (N.D. Ill. Sept. 9, 2013) (finding no need to construe "radius of curvature," a "defined mathematical term determined by a defined formula that can be applied to any curve" and was "not of the inventor's making").

The next step, comparing the claim to the accused product, is trickier because plaintiff never clearly explains where to find the claimed angle of about 45 degrees in the accused product. Plaintiff's position on where to locate the infringing 45-degree angle has shifted throughout this litigation, but it seems to have come to rest on comparing the following images. The first is of Figure 8 of the '755 patent (*see* ECF No. 48-2 at 21); the second is a photograph of the accused product, with lines drawn on the image, which purport to represent the crossing zipper members and the approximately 45-degree angle formed where they join (Def.'s LR 56.1 Resp. ¶ 10, ECF No. 68; Pl.'s Mem. in Supp. of Cross-Mot. and Resp. Br. at 28, ECF No. 59 at 33).



FIG. 8



Defendant argues, however, that the lines drawn on the photograph (as shown at left) do not accurately represent the features of the accused product. In the photograph, the lines plaintiff has drawn to represent the zipper members suggest that the zipper members have identically shaped, pointed ends that join together at a point that plaintiff represents to be the vertex of the purported 45-degree angle.[2] But defendant's expert

witness, Tim A. Osswald, a professor of mechanical engineering, proposes to testify that, based on Computer Aided Design ("CAD") files of the accused containers (which were produced to plaintiff in this litigation) as well as defendant's internal schematics, the accused product's zipper members do not have pointed ends angled at about 45 degrees. (Osswald Reply Decl. ¶¶ 18, 20, ECF No. 67.)



Instead, as the CAD image (at right) shows, the zipper members are curved, and they terminate in a flat, blunt face, not a pointed end. (Pl.'s LR 56.1 Resp. ¶ 28, ECF No. 80 (citing Osswald Reply Decl. ¶ 18 and Dryden Reply Decl. Ex. 3, ECF No. 71-2.).)

---

[2] In fact, the angle in the photograph is more than fifty degrees, but the Court assumes that this is close enough to qualify as "about" 45 degrees. *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1369 (Fed. Cir. 2005) (holding that the term "about" should generally "be given its ordinary meaning of 'approximately,'" not construed to mean "exactly"). The Court also notes parenthetically that this photograph, which appears in several places in plaintiff's summary judgment materials, is sometimes distorted so that the angle appears to be as much as sixty-seven degrees. Again, the Court assumes, for present purposes, that the angle depicted here is "about" 45 degrees.

Additionally, the zipper members are not identical in shape relative to one another. They are curved on the inner face, and straight on the outer face, which means, according to Mr. Osswald, that they cannot be "overlaid to produce a joined profile"; instead, "their joined profile would be a new shape that matches neither zipper member end's profile," and does not form a pointed end. (Osswald Reply Decl. ¶ 19, ECF No. 67; *see id.* ¶ 20.) Therefore, Mr. Osswald concludes, there is no measurable "angle" at all at the ends of the zipper members where they engage, and to the extent there is an angle, it is at least seventy-three degrees, which is not "about" forty-five degrees. (*See id.* ¶¶ 20-21; *see also* Pl.'s LR 56.1 Resp. ¶ 24, ECF No. 80 (admitting that an "angle measuring 'about 67 degrees' does not measure 'about 45 degrees'").)

Plaintiff does not dispute any of this, except to cite defendant's Exhibits 15 and 16—which are physical samples of the small and medium versions of the accused products. (Pl.'s LR 56.1 Resp. ¶¶ 25-33.) Nor does plaintiff make any argument in reply, except similarly to point to the photograph of the accused product and the physical samples again. (*See* Pl.'s Reply Br. at 11-12, ECF No. 77.) But merely viewing the accused product or a photo of it with the naked eye does not reveal whether the zipper members are "angled at about 45 degrees" where they engage at the tips, as the claim language of the '755 patent requires,[3] and plaintiff has not explained how a jury could

---

[3] Additionally, the Court notes that a product "does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim." *Accent Packaging, Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1327 (Fed. Cir. 2013). Plaintiff does not argue that the patent is infringed because it is possible to contort the silicone product in some way that puts the zipper members at a forty-five-degree angle, nor could it, not only because of the above-cited authority, but also because it appears to have disclaimed that position during the patent prosecution process. (*See* Pl.'s LR 56.1 Resp. ¶ 41 (citing Dryden Decl. Ex. 4, ECF No. 48-6 at 82 (deleting claim language that described "tips compris[ing] silicone . . . that allows the first and second corners to deform from angles of about 45 degrees to angles of about 0 degrees" and replacing it with the language at issue here)).)

conclude that the zipper members are so angled, despite the contrary evidence proffered by defendant. *See Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1022 (7th Cir. 2018) (explaining that "the non-movant must set forth specific facts demonstrating a genuine issue for trial," and pointing to evidence of a mere "'metaphysical doubt' is insufficient" to do so) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *see also Kluge v. Brownsburg Cmty. Sch. Corp.*, 64 F.4th 861, 887 (7th Cir. 2023) (explaining that, at summary judgment, a district court need not "disbelieve defendants' proffered evidence simply because [the plaintiff]—without proof—asserts it is false," where the plaintiff does not also come forward with "specific facts" to refute it) (internal quotation marks omitted) (citing *Carroll v. Lynch*, 698 F.3d 561, 565 (7th Cir. 2012), and *Matushita*, 475 U.S. at 587), *vacated on other grounds on denial of reh'g,* No. 21-2475, 2023 WL 4842324 (7th Cir. July 28, 2023). Plaintiff has not come forward with evidence sufficient to permit a reasonable factfinder to find in its favor on this issue of material fact. *See Traxcell Techs., LLC v. Sprint Commc'ns Co. LP*, 15 F.4th 1121, 1130 (Fed. Cir. 2021) (citing *Novartis Corp. v. Ben Venue Lab'ys, Inc.*, 271 F.3d 1043, 1054 (Fed. Cir. 2001) (affirming summary judgment of non-infringement because patentee did not "meet obligation to set forth the detailed basis of its evidence such that the district court could evaluate whether it could support a finding of infringement")); *see also Black & Decker Corp. v. Positec USA Inc.*, No. 11-CV-5426, 2015 WL 1543262, at *19 (N.D. Ill. Mar. 31, 2015) (granting summary judgment of infringement because "Defendants offer evidence that this [claimed element] is absent in the disclosed structures, and Plaintiffs produce nothing in response."); *Lamoureux v. AnazaoHealth Corp.*, No. 03CV1382, 2012 WL 12537933, at *26 (D. Conn. Sept. 24, 2012) (explaining that plaintiffs' "speculation" as to nature of accused product did not create a genuine

issue of material fact that would permit a jury to find for plaintiffs on issue of infringement) (citing *Matsushita*, 475 U.S. at 586).

"[A] grant of summary judgment of noninfringement is proper when no reasonable factfinder could find that the accused product contains every claim limitation or its equivalent."[4] *Medgraph*, 843 F.3d at 949. Plaintiff has not come forward with sufficient evidence to permit a reasonable factfinder to find that the accused product has either a "spout" or zipper members that are "angled at about 45 degrees," as required by the '890 and '755 patents, respectively. Because plaintiff cannot show that the accused product contains these limitations, summary judgment for defendant on the issue of infringement is appropriate.

### D. Invalidity for Indefiniteness

Given the Court's conclusion on the infringement issue, the Court need not reach the invalidity issue to resolve defendant's motion for summary judgment, and plaintiff has not cross-moved for a ruling on that issue. "Granting summary judgment based on non-infringement generally does not moot a counterclaim based on invalidity, *see Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1348-49 (Fed. Cir. 2005) . . . but this court still has discretion to not consider [defendant's] request for a declaratory judgment" of indefiniteness. *Wells-Gardner Elecs. Corp. v. C. Ceronix, Inc.*, No. 10 C 2536, 2011 WL 1467182, at *3 (N.D. Ill. Apr. 14, 2011) (citing

---

[4] The Court notes parenthetically that defendant argued in its opening brief that plaintiff has not set forth sufficient evidence to support a jury verdict of either literal infringement or infringement under the doctrine of equivalents. *See Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1370 (Fed. Cir. 2004); *Zelinski*, 185 F.3d at 1317. Plaintiff has not responded to defendant's argument under the doctrine of equivalents, and has therefore forfeited that ground. *Bishop v. Air Line Pilots Ass'n, Int'l*, 511 F. Supp. 3d 830, 847 (N.D. Ill.), *aff'd*, 5 F.4th 684 (7th Cir. 2021); *Johnson v. Trans Union, LLC*, No. 10 C 6960, 2012 WL 983793, at *8 (N.D. Ill. Mar. 22, 2012), *aff'd*, 524 F. App'x 268 (7th Cir. 2013). Forfeiture aside, plaintiff has not come forward with sufficient evidence to support a finding in its favor on that issue, so summary judgment for defendant is appropriate. *See Centricut*, 390 F.3d at 1370; *Zelinski*, 185 F.3d at 1317.

*Phonometrics, Inc. v. N. Telecom, Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998)). "While the better practice is to treat both the validity and infringement issues, . . . it is not always necessary to do so," particularly where "noninfringement is clear and invalidity is not plainly evident." *Leesona Corp. v. United States*, 530 F.2d 896, 906 n.9 (Ct. Cl. 1976) *cited in Phonometrics*, 133 F.3d at 1468.

This is a case in which "noninfringement is clear and invalidity is not plainly evident." *Id.* A claim is invalid for indefiniteness only if, when "read in light of the specification" and "prosecution history," it "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). The Court finds nothing so vague about the claim language concerning zipper members that are "angled at about 45 degrees at the tips," as to plainly suggest indefiniteness. If anything, the claim language is *too* clear for plaintiff's purposes: it describes zipper members that form a particular shape, and plaintiff has not adduced evidence sufficient to show that the zipper members of the accused product form that shape. Therefore, the Court grants summary judgment for defendant on the infringement issue, denies summary judgment for plaintiff on that issue, and declines to decide the issue of invalidity of the '755 patent for indefiniteness.

### E. Motions to Seal

Finally, the parties have moved to seal a number of documents filed in support of their summary judgment motions. Plaintiff moves to seal schematic diagrams of the accused product, on the ground that the diagrams were produced by defendant and designated by defendant as "confidential, attorney eyes only." (Pl.'s Apr. 20, 2023 Mot. to Seal, ECF No. 64.) Further, plaintiff moves to seal its entire Local Rule 56.1(b)(3) statement of additional facts because it contains these schematic diagrams. (Pl.'s Jun. 1, 2023 Mot. to Seal, ECF No. 78.) Defendant, for its part,

moves to seal its combined reply/response brief (ECF No. 66), its Local Rule 56.1(b)(2) response

to plaintiff's statement of facts (ECF No. 68), its Local Rule 56.1(b)(3) statement of additional

material facts (ECF No. 69), Exhibits 1, 3-8, and 10 to the declaration of one of its attorneys in

support of its combined reply/response brief (ECF No. 71), and the declaration of its expert

witness, Tim Osswald, in support of its combined reply/response brief (ECF No. 67). (Def.'s May

18, 2023 Mot. to Seal, ECF No. 72.) Defendant states in support of the motion to seal only that

"[g]ood cause exists for keeping these documents under seal, which contain highly confidential

competitive, sensitive strategic, and financial business information of Defendant." (Def.'s Mot. to

Seal ¶ 11.)

As an initial matter, these motions to seal are not procedurally proper. Under Local Patent

Rule 1.4, the protective order found in Appendix B to the local patent rules applies automatically,

by default. The default protective order permits parties to designate information produced in

discovery as "confidential" or "highly confidential," which imposes certain obligations on the

parties to restrict access to and disclosure of such documents. However, paragraph 6.a. of the

protective order states that the order "does not, by itself, authorize the filing of any document under

seal." To file such confidential documents under seal, a party must "move the Court, consistent

with Local Rule 26.2(b) . . . for permission." Local Rule 26.2(b) states that no document may be

filed under seal without "order of court . . . except that a document may provisionally be filed

under seal pursuant to subsection (c) below." Local Rule 26.2(c), in turn, provides that any party

filing a motion to seal electronically must "(1) provisionally file the document electronically under

seal; (2) file electronically at the same time a public-record version of the brief, motion, or other

submission with only the sealed document excluded; and (3) move the court for leave to file the

document under seal." The parties have not filed public-record versions of these documents that

leave the substance of the documents open to public view and reasonably redact only the confidential or highly confidential information; instead, they have moved to seal lengthy court documents in their entirety.

To the extent the parties have filed such lengthy documents under seal in the belief that they contain confidential information from start to finish, the Court is highly skeptical. At the very least, the parties have not made the showing necessary to maintain these documents under seal in their entirety. Litigation in federal courts is presumptively public, and people who "call on the courts . . . must accept the openness that goes with subsidized dispute resolution." *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567-68 (7th Cir. 2000) ("Many a litigant would prefer that the subject of the case . . . be kept from the curious (including its business rivals and customers), but the tradition that litigation is open to the public is of very long standing."). "[O]nly trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence . . . is entitled to be kept secret." *Baxter Int'l v. Abbott Lab'ys*, 297 F.3d 544, 546 (7th Cir. 2002). "Secrecy is fine at the discovery stage, before the material enters the judicial record. But those documents, usually a small subset of all discovery, that influence or underpin the judicial decision are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Id.* at 545 (internal citation omitted). "The rights of the public kick in when material produced during discovery is filed with the court." *Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009).

The Court looks to defendant, as the party who designated this information as confidential, for an explanation of why these documents are properly maintained under seal. Defendant has made no attempt to show how and why the standards set forth in *Union Oil* and *Baxter* are met here, and it has certainly not shown why entire briefs and lengthy Local Rule 56.1 statements must

remain under seal. *See Tufco LP v. Reckitt Benckiser (ENA) BV*, No. 21-C-1199, 2022 WL 1289320, at *1 (E.D. Wis. Apr. 29, 2022) (motions to restrict access to "entire pleadings and briefs" are "grossly overbroad[,] . . . absent unusual circumstances") (citing *Union Oil*, 220 F.3d at 567). "Claims of confidentiality must be specifically justified." *DuraSystems Barriers Inc. v. Van-Packer Co.*, 666 F. Supp. 3d 749, 757 (C.D. Ill. 2023) (citing *Baxter*, 297 F.3d at 546); *see Gove v. Sargento Foods, Inc.*, No. 18-CV-1335-PP, 2023 WL 3953287, at *5 (E.D. Wis. June 11, 2023). "A motion to seal thus has 'no prospect of success' unless it analyzes 'in detail, document by document, the propriety of secrecy, providing reasons and legal citations.'" *Mercasia USA Ltd. v. 3BTech, Inc.*, No. 3:17-CV-718 JD, 2022 WL 872735, at *3 (N.D. Ind. Mar. 24, 2022) (citing *Baxter*, 297 F.3d at 548). There is no such painstaking analysis here, nor is any proper basis for keeping this information under seal obvious to the Court. "Commercially sensitive information can be kept secret at the discovery stage, but general interests in commercial advantage and privacy aren't sufficient reasons to keep information relevant to judicial decision-making secret." *Palacio v. Med. Fin. Sols.*, No. 21 CV 1288, 2022 WL 2132505, at *2 n.4 (N.D. Ill. June 14, 2022) (citing *Baxter*, 297 F.3d at 545). Merely "[l]abeling . . . information 'sensitive,'" *Kotoklo v. Karpinski*, No. 20-CV-0635, 2021 WL 4516362, at *2 (N.D. Ill. Apr. 12, 2021), or "asserting that a disclosure of the information 'could' harm a litigant's competitive position is insufficient; the motion must explain how." *Gordon v. Menard, Inc.*, No. 23 C 317, 2023 WL 6619427, at *2 (N.D. Ind. Oct. 10, 2023) (cleaned up).

The Court has relied (at least in part) on the documents defendant asks the Court to seal in rendering this decision, so "the strong presumption of public disclosure applies." *Baxter*, 297 F.3d at 548. If defendant wanted to keep all of these documents secret, it "should not have proffered them in response to [plaintiff's] motion" or in support of its own motion. *See In re Specht*, 622

F.3d 697, 701 (7th Cir. 2010). "Because the motions to seal do not contend that the standards of *Baxter* and *Union Oil* have been satisfied, they are denied." *Id.*

The Court has considered simply ordering these documents unsealed, but, in an abundance of caution, the Court will give defendant an opportunity to file a renewed motion that properly demonstrates that the information within its scope meets the above standards and is entitled to be kept under seal. The Court will keep the documents provisionally under seal for a period of seven days from the date of this Memorandum Opinion and Order. Defendant may file a renewed, properly supported motion to seal by that date, if desired. Otherwise, the Court will direct the Clerk to unseal the documents.

## III.    Conclusion

For the reasons set forth above, the Court denies plaintiff's motion [58] for summary judgment. The Court grants defendant's motion [45] for summary judgment on the infringement issue; the Court denies the motion without prejudice as to the invalidity issue. The Court finds and declares that defendant's Ziploc Endurables products do not infringe plaintiff's '890 or '755 patents. Documents [59], [60], [61], and [62], which are submitted in support of plaintiff's cross-motion but are erroneously docketed as motions although they seek no separate relief, are denied as moot. The motions to seal [64], [72], and [78] are denied. Documents [63], [66], [68], [69], [71], and [80] will remain provisionally under seal for a period of seven days from the date of this Memorandum Opinion and Order. After that period expires, the Court will unseal the documents, unless defendant files a renewed motion to seal meeting the standards set forth herein. Defendant's remaining counterclaims are dismissed without prejudice. Civil case terminated.

**SO ORDERED.**                    **ENTERED:   March 7, 2024**

_____

**HON. JORGE ALONSO**
**United States District Judge**